RAMAEKERS, MCPHERRON AND SKILES, P.C., A NEBRASKA PROFESSIONAL CORPORATION, APPELLEE, V. VIOLA H. RAMAEKERS, PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM F. RAMAEKERS, DECEASED, APPELLANT.

549 N.W.2d 662

Filed June 11, 1996.   No. A–94–1194.

James E. Schneider, of Schneider Law Office, P.C., for appellant.

G. Peter Burger, of Burger, Bennett & Green, P.C., for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

In a previous appeal, *Ramaekers, McPherron & Skiles v. Ramaekers*, 94 NCA No. 35, case No. A–93–068 (not designated for permanent publication) (*Ramaekers I*), this court directed the trial court to increase a judgment by $32,435.09, the amount of interest that accrued before judgment on the contract sued upon. This appeal involves what rate of interest, if any, should accrue on that increased judgment and the date the accrual should commence. The trial court allowed interest from the time this court's mandate was spread until the amount was paid in full, a period of 7 days, at the rate of 6.69 percent per annum, which was the interest rate provided under Neb. Rev. Stat. § 45–103 (Cum. Supp. 1994) for judgments entered in early October 1994. The judgment creditor appeals, alleging the estate is entitled to interest on the increase ordered by this court from the date the trial court entered its original judgment at the rate the contract sued upon provided that principal payments due under the contract should bear. We conclude interest on the increase in the decree ordered by this court should accrue from the date of the original judgment, January 19, 1993, at the interest rate provided for in § 45–103 (Reissue

1993) for judgments entered on that date, that is, 4.67 percent per annum. We therefore reverse the judgment and remand the cause to the trial court.

## BACKGROUND

Ramaekers, McPherron and Skiles, P.C., is a professional corporation engaging in the practice of accounting, and *Ramaekers I* was an action to determine the amount that the corporation owed the estate of its principal stockholder, William F. Ramaekers, upon his death under a written agreement which provided for the sale of stock of the deceased stockholders of the corporation to the corporation. In *Ramaekers I*, this court ordered as follows:

> We conclude that the agreement provided for interest of 10 percent per annum on the value of the stock, $406,832, from September 2, 1990 [20 days after Ramaekers' death], to June 20, 1991 [the date the amount was paid]. The total number of days at which the interest should be calculated is 291 days, which results in interest of $32,435.09. The trial court shall modify its judgment by increasing the judgment for the estate by the amount of $32,435.09.

94 NCA No. 35 at 26.

The order became final, and this court issued its mandate on October 7, 1994. The mandate was filed with the district court on October 10, and on October 17, the corporation paid the $32,435.09.

On November 7, 1994, the estate filed a "Motion and Notice of Hearing to Compute Interest" in which it alleged the corporation refused to pay interest on the increased judgment, and requested the court to determine the amount of interest due. After a hearing, the trial court found that the mandate of this court was spread on October 10 and that on October 17 the judgment of $32,435.09 was paid. It found the estate was entitled to interest from October 10 at the rate of 6.69 percent per annum, that is, $41.58, and ordered that sum paid.

## ASSIGNMENTS OF ERROR

The estate assigns five errors, which can be summarized as a claim that the trial court erred in computing the interest in respect to both its rate and the date that it began to accrue.

## STANDARD OF REVIEW

■ The questions raised by this appeal are questions of law. Regarding questions of law, an appellate court has the obligation to reach a conclusion independent of that of the trial court. *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995); *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995).

## DISCUSSION

### Should Judgment Draw Interest?

The corporation contends that although it has not cross-appealed the award of $41.58 interest because it was so small, it believes that the judgment should not draw any interest, and therefore notwithstanding the lack of a cross-appeal, further interest should not be allowed.

■ The general rule is that " 'in the absence of contract or statute, compensation in the form of compound interest is not allowed to be computed upon a debt.' " *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 420, 520 N.W.2d 189, 195 (1994). Upon the basis of this authority, the corporation argues that the $32,435.09 judgment was for interest and that therefore any interest allowed on that sum would be compound interest, and not allowable.

We cannot agree. We believe the true rule to be the following:

"Where the parties have contracted for the payment of a particular lawful rate of interest, to be paid after the maturity of the debt and on default in payment, such contract controls and the rate thus fixed is recoverable, provided the rate is not unconscionable. Thus, if the contract provides for a certain rate of interest until the principal sum is paid, such contract generally will control the recovery as to the rate after maturity; in other words, *the contract governs until the payment of the principal or until the contract is merged in a judgment.*"

(Emphasis supplied.) *Prudential Ins. Co. v. Greco*, 211 Neb. 342, 347–48, 318 N.W.2d 724, 728 (1982) (quoting 47 C.J.S. *Interest & Usury* § 40 a. (1982)).

■ In 47 C.J.S. *Interest & Usury* § 24 at 70 (1982), the author notes: "Compound interest on a judgment generally is

not recoverable, unless it is authorized by statute; but this rule has been held not to be violated by interest on the whole amount of a judgment, although such amount is made up partly of interest on the original obligation." Similarly, in 45 Am. Jur. 2d *Interest and Usury* § 78 at 71 (1969), the author states: "Although compound interest generally is not allowable on a judgment, it is established that a judgment bears interest on the whole amount from its date even though the amount is in part made up of interest . . . ."

We therefore conclude the estate is entitled to interest on the judgment, but the date that it should commence and its rate need to be determined.

*Date Interest Commences.*

The corporation argues that if the estate is entitled to any interest it should commence to run when the mandate was spread, that is, October 10, 1994. The estate argues that the trial court should have awarded it interest on the $32,435.09 from June 21, 1991. Under a written agreement between the decedent and the corporation, the corporation was bound to buy and the estate was bound to sell all of the decedent's stock in the corporation. On June 18, the parties entered into a stipulation under which the corporation paid to the estate more than it thought it owed for the stock, but less than the estate thought it was owed. The parties had a sound reason for arriving at the amount paid under the stipulation, and ultimately both the trial court and this court determined that the amount paid was the true value of the stock.

The stipulation provided that the payment that was made to the estate on June 20, 1991, would be applied to the amount to be determined by the court as due under the contract. Thus the sale price, or principal, due under the contract was deemed paid on June 20. In *Ramaekers I*, the estate maintained that it was entitled to interest at the contract rate of 10 percent per annum until June 20. This court agreed and determined that amount was $32,435.09.

Neb. Rev. Stat. § 45-103.01 (Reissue 1993) provides: "Judgment interest shall accrue on decrees and judgments for the payment of money from the date of rendition of judgment

until satisfaction of judgment." Neb. Rev. Stat. § 25-1301(2) (Reissue 1995) provides: "Rendition of a judgment is the act of the court, or a judge thereof, in pronouncing judgment, accompanied by the making of a notation on the trial docket, or one made at the direction of the court or judge thereof, of the relief granted or denied in an action." By judicial decision, the Supreme Court has held that when no oral pronouncement is made, the date of rendition of a judgment is the date the order is spread on the record of the court. *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994). Neb. Rev. Stat. § 25-1926 (Reissue 1995) provides in part: "When a judgment or final order is reversed either in whole or in part in the Court of Appeals or Supreme Court, the appellate court shall proceed to render such judgment as the court below should have rendered or remand the cause to the court below for such judgment." These statutes do not answer the question of when a judgment that is increased upon appeal is considered to have been rendered for purposes of interest accrual.

We are unable to find any Nebraska case squarely on point. However, two cases at least indicate that when a judgment is modified on appeal, then interest on the award as modified commences to accrue from the date of the original judgment, whether the modification increases or decreases the trial court's judgment.

In *Rawlings v. Anheuser–Busch Brewing Co.*, 69 Neb. 34, 94 N.W. 1001 (1903), the Supreme Court expressly held that interest commenced to run on the date the trial court rendered its original judgment when the amount of that judgment had been decreased on appeal by a remittitur. The statute quoted in that opinion provided that interest on a judgment should run from the date of rendition thereof, just as § 45-103.01 now provides. The court stated the remittitur related back to the date of the rendition of the original judgment.

In the recent case *Koterzina v. Copple Chevrolet*, 249 Neb. 158, 542 N.W.2d 696 (1996), the Supreme Court was presented with a situation where the amount of the judgment had not been increased on appeal, but the percentage of a workers' compensation disability award that a judgment debtor was required to pay had been increased. The court held that

interest commenced to run from the date of the original workers' compensation award. In a previous case involving the same parties, the Court of Appeals had modified a workers' compensation judgment by concluding that the Second Injury Fund should pay 100 percent of certain temporary and permanent disability benefits rather than the 30 percent of the permanent benefits that the Workers' Compensation Court had previously determined. After that modification had become final, the plaintiff sought to enforce the judgment, including interest on the full amount of the judgment from the date of the original compensation court award at the judgment rate. The Supreme Court determined that in part under Neb. Rev. Stat. § 48–188 (Reissue 1993) and §§ 45–103.01 and 25–1301(2), the plaintiff was entitled to interest on 100 percent of the disability award from the Second Injury Fund from the date of the original workers' compensation award. In making that decision, the court stated, "[T]he Court of Appeals' modification of that award also had a nunc pro tunc effect, pursuant to § 48–188." 249 Neb. at 167, 542 N.W.2d at 703. The *Rawlings* court uses the legal fiction of relation back to hold the decreased judgment was rendered when the original judgment was rendered, and the *Koterzina* court uses a "nunc pro tunc effect" to accomplish the same result. Both cases indicate that when a judgment is modified upon appeal, interest runs on the full amount of the judgment as modified from the date the original judgment was rendered by the trial court.

We find the authorities from other states accept this principle:

[T]he current view taken by a majority of the states is that where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, then the interest on the award, as modified, should run from the date of the original judgment . . . as if no appeal had been taken. . . .

Furthermore, interest has been held to accrue on a judgment from the date of its original entry whether on appeal the amount of the judgment is reduced, or increased.

47 C.J.S. *Interest and Usury* § 68 at 158–59 (1982).

■ The author of an annotation on interest after modification of judgments summarizes the cases on this subject as follows:

> In most cases where a money award has been modified on appeal, and the only action necessary in the trial court has been compliance with the mandate of the appellate court, the view has been taken that interest on the award as modified should run from the same date as if no appeal had been taken, that is, ordinarily, from the date of entry of the verdict or judgment. It has been so held regardless of whether the appellate court reduced or increased the original award.

Annot., Date From Which Interest on Judgment Starts Running, as Affected by Modification of Amount of Judgment on Appeal, 4 A.L.R.3d 1221, 1223 (1965). It therefore seems clear that interest on a judgment increased upon appeal commences to run from the date the trial court entered its original judgment.

The corporation next argues that the judgment for $32,435.09 ordered upon appeal did not modify an original judgment because the original judgment of the trial court did not provide for a money judgment, and therefore notwithstanding the above authority, interest would still accrue when the trial court entered this court's judgment.

In this particular case, the procedural facts could justify that position, because the amount that the estate had already received under the stipulation was the amount the trial court found to be due. The prepayment had the effect of stopping interest on the principal sum before the judgment was entered. The judgment entered by the court required the estate to transfer its stock to the corporation, but did not order the payment at the time. It can be argued that the order of this court did not increase the trial court's judgment, but, rather, that the judgment of this court originated a judgment for $32,435.09. It can also be argued that the order of this court did increase the nonmoney original judgment of the trial court. Under the terms of this court's order in *Ramaekers I*, we cannot consider this interesting question. In *Ramaekers I*, 94 NCA No. 35 at 26, this court directed the trial court to "modify its judgment by increasing the judgment for the estate by the amount of $32,435.09."

█ Under the law–of–the–case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994); *Waite v. Carpenter*, 3 Neb. App. 879, 533 N.W.2d 917 (1995). See, also, *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994) (holding erroneous interpretation of law does not necessarily void law–of–the–case doctrine). Therefore, we conclude that interest should run from the date the trial court entered its original judgment, January 19, 1993.

*Rate of Interest.*

We next consider the appropriate rate of interest. Postjudgment interest is provided for by § 45–103 (Reissue 1993), which in significant part provides: "Judgment interest on decrees and judgments for the payment of money shall be fixed at a rate equal to one percentage point above the bond equivalent yield . . . ."

If an increased judgment draws interest from the date of the original judgment, it seems clear that the rate of interest applicable to that increase would be the rate that was provided for judgments when that original judgment was entered. In this case, that would be January 19, 1993. The rate of interest published in the Nebraska Advance Sheets for judgments entered upon January 19, 1993, was 4.67 percent per annum. The estate is therefore entitled to interest at that rate from January 19, 1993, until it is paid.

*Application of Payment.*

█ The corporation has already paid $32,435.09 on October 17, 1994, and perhaps it has paid the $41.58 the court determined it owed, but we do not know the date it was paid. We fear the partial payments might cause further difficulties. We call the parties' attention to the rule that interest on a judgment or debt is computed up to the time of the first payment, and that payment is first applied to interest and the balance to principal. *State ex rel. Beck v. Associates Discount Corp.*, 168 Neb. 298, 96 N.W.2d 55 (1959), *overruled on other*

*grounds, Dailey v. A. C. Nelsen Co.*, 178 Neb. 881, 136 N.W.2d 186 (1965); *Davis v. Neligh*, 7 Neb. 78 (1878); *Mills v. Saunders*, 4 Neb. 190 (1875). The trial court's order on interest indicates that this rule was ignored by the court in its computation of $41.58. Of course the effect of that action would be minimal. However, the effect could be considerable by the time this case is returned to the trial court.

## CONCLUSION

We conclude that the estate was entitled to interest on the $32,435.09 from January 19, 1993, at the rate of 4.67 percent per annum until it is paid, and the trial court's order determining otherwise is reversed and the cause remanded so the judgment for $32,435.09 plus interest less payments may be enforced.

REVERSED AND REMANDED WITH DIRECTIONS.